FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

2000 NOV -3  PM 3: 12

CLERK, U.S. DISTRICT COURT
OCALA, FLORIDA

|  |  |  |
|---|---|---|
| MARIS DISTRIBUTING COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO. |
| ANHEUSER-BUSCH, INC., *et al.*, | ) | 97-15-CIV-OC-10C |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**DEFENDANT ANHEUSER-BUSCH, INC.'S
PROPOSED SUPPLEMENTAL JURY INSTRUCTIONS**

In accordance with the Court's October 31, 2000 request, defendant Anheuser-Busch, Inc.
hereby submits the following proposed jury instructions to supplement the Court's draft
instructions, dated July 20, 2000.  For the Court's convenience, a disk containing the proposed
instructions is attached hereto as Attachment A.

Anheuser-Busch also respectfully requests that four minor revisions be made to the
wording of the Court's July 20, 2000 draft instructions, as indicated on Attachment B hereto, in
order to:  1) reflect the fact that paragraph 4(i) of the Equity Agreement was not "imposed" by
Anheuser-Busch but, rather, was mutually agreed to by the parties to the contract (*see* paragraphs
21 and 35 of Attachment B); and 2) insert the word "antitrust" prior to the word "injury" in the
list of the four essential elements of plaintiff's case.  (*See* paragraph 22 of Attachment B.)

Attached hereto as Attachment C is a copy of the portions of the trial transcript cited as
authority for certain proposed instructions.


**SCANNED**

765

Dated:  November 3, 2000                Respectfully submitted,


Peter E. Moll (Trial Counsel)
Carmine R. Zarlenga
Brian D. Wallach
HOWREY SIMON ARNOLD & WHITE, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  (202) 783-0800
Facsimile:  (202) 383-6610

George E. Schulz, Jr. Fla. Bar #169507
Christopher Greene Fla. Bar # 516015
HOLLAND & KNIGHT
50 North Laura Street
Jacksonville, Florida  32202
Telephone:  (904) 353-2000
Facsimile:  (904) 358-1872

**Attorneys for Defendant
Anheuser-Busch, Inc.**

**INSTRUCTION NO. 1**
**[insert between ¶¶ 5 & 6 of Court's 7/20/00 Draft Instructions]**

**<u>General - Disregarding Evidence – General</u>**

You will recall that on several occasions as evidence was being presented during the trial, I instructed you to disregard certain evidence that I did not admit in the record.  I again caution you that you should not take any such evidence into consideration in reaching your verdict.

1

## INSTRUCTION NO. 2
### [insert between ¶¶ 5 & 6 of Court's 7/20/00 Draft Instructions]

### <u>General – Disregarding Evidence – Termination</u>

You will also recall that on several occasions as evidence was being presented during the trial, I instructed you to disregard evidence pertaining to the termination of Maris Distributing Company as a wholesaler for Anheuser-Busch.  Let me repeat that instruction, because it is important.

The reason for the termination of Maris Distributing Company had nothing to do with paragraph 4(i) of the Equity Agreement.  The rightfulness or wrongfulness of the termination of Maris Distributing Company is not an issue in this case.   That issue will be resolved in a separate lawsuit filed by Maris Distributing Company in Florida state court.

So you should not consider that termination in any way in reaching your verdict in this case.  For example, you should not consider whether it was justified or unjustified, or whether Maris Distributing was harmed by that termination.  And you should not consider whether Maris Distributing Company was complying or not complying with the Equity Agreement.  These issues are totally irrelevant to the claims in this lawsuit about paragraph 4(i) of the Equity Agreement.


**Authority:**  9/26/00 Trial Tr. at 173-74 (Court); 7/20/00 Order (Doc. # 627).

2

## INSTRUCTION NO. 3
### [Insert after first sentence of ¶ 6 of Court's 7/20/00 Draft Instructions]

### General – Disregarding Questions Of Attorneys

In that regard, you are instructed that if during the course of the presentation of evidence an attorney asked a question to which I sustained an objection, and the witness accordingly did not answer the question, you should attribute no significance to the question posed by the attorney – those are not facts in evidence.

## INSTRUCTION NO. 4
### [insert between ¶¶ 12 & 13 of Court's 7/20/00 Draft Instructions]
### <u>General – Expert Witnesses Fees</u>

When a witness has been or will be paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such a witness where court testimony is given with regularity and represents a significant portion of the witness's income.

**Authority:**  Committee on Pattern Jury Instructions, Eleventh Circuit, <u>Pattern Jury Instructions Civil Cases</u> at 21 (2000).

**INSTRUCTION NO. 5**
**[insert between ¶¶ 26 & 27 of Court's 7/20/00 Draft Instructions]**

**Relevant Product Market –**
**Reasonable Substitutes Or Alternatives**

What you must decide here is whether purchasers of ownership interests in beer

wholesalerships have reasonable alternatives.  If there are reasonable alternatives to the purchase

of beer wholesalerships, from a buyer's point of view, then you must find for Anheuser-Busch on

this issue; if, however, you find that there are no reasonable alternatives to the purchase of beer

wholesalerships, then Maris Distributing has met its burden of proving a relevant product market,

and you should find for the plaintiff on this issue.


**Authority:** Court's 7/20/00 Draft Jury Instructions; <u>Sample Jury Instructions in Civil</u>
<u>Antitrust Cases</u> at C-7 (ABA 1999).

## INSTRUCTION NO. 6
### [insert between ¶¶ 26 & 27 of Court's 7/20/00 Draft Instructions]

### Relevant Product Market - "Cross Elasticity Of Demand"

In evaluating whether there are reasonable alternatives to ownership interests in beer wholesalerships, you should consider the concept of "cross elasticity of demand."  According to this concept, if a change in the price of one product causes a number of buyers to switch to another similar product, those two products are in the same market.

Here, if a price increase in beer wholesalerships is likely to cause a number of potential purchasers of beer wholesalerships to switch their investments to other kinds of businesses, such as soft-drink, liquor, wine, bottled water, air-conditioning, heavy equipment or other wholesale distributorships, then those wholesale distributorships also belong in the relevant product market. Like many issues of fact, this one calls for you to apply your collective common sense and experience to the evidence that has been presented to you.

If you find that, based on the concept of "cross elasticity of demand" that I have explained, there are products that Maris Distributing has failed to account for in its alleged relevant markets, then you must find that Maris Distributing has failed to define a relevant product market.  On the other hand, if you find that Maris Distributing has accounted for those other products and has proven them to be outside the relevant product market, then Maris Distributing has met its burden of proof on this issue.

**Authority:** Court's 7/20/00 Draft Jury Instructions; <u>Sample Jury Instructions in Civil Antitrust Cases</u> at C-7 (ABA 1999); *United States Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 995 (11th Cir. 1993), *cert. denied,* 512 U.S. 1221 (1994)*; American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985).

## INSTRUCTION NO. 7
### [insert between ¶¶ 26 & 27 of Court's 7/20/00 Draft Instructions]

### Relevant Product Market – Maris Distributing's Alleged Relevant Submarket

In this case, Maris Distributing also alleges a relevant submarket consisting solely of ownership interests in Anheuser-Busch wholesalerships. Anheuser-Busch disputes Maris Distributing's identification of this sub-market and claims that franchises or distributorships of a single manufacturer cannot constitute a relevant product market for antitrust purposes.

You should determine whether Maris Distributing has proven that there is a submarket consisting solely of ownership interests in Anheuser-Busch wholesalerships in the same way that you determine whether there is a product market for ownership interests in all beer wholesalerships – that is, by looking at whether there are reasonable substitutes for Anheuser-Busch beer wholesalerships, and by considering the "cross-elasticity of demand" between Anheuser-Busch beer wholesalerships and other investment options.


**Authority:** <u>Sample Jury Instructions in Civil Antitrust Cases</u> at C-8, n. 3 (ABA 1999).

**INSTRUCTION NO. 8**
**[insert between ¶¶ 26 & 27 of Court's 7/20/00 Draft Instructions]**

**Relevant Product Market – Threshold Requirement**

If, in considering all of these factors that I have just explained to you, you find that

plaintiff has not proved by a preponderance of the evidence that there is a relevant product

market consisting of ownership interests in beer wholesalerships in the United States, **you must**

return a verdict in favor of Anheuser-Busch.  You should answer "No" to Question __ on the

Verdict Form that I will submit to you before you begin your deliberations, and you should stop

your deliberations at that point.  Only if you find that plaintiff has proved by a preponderance of

the evidence that there is a relevant product market should you then go on to consider whether

plaintiff has proved that paragraph 4(i) had a substantial harmful effect on competition in that

alleged product market.


**Authority:**  Sample Jury Instructions in Civil Antitrust Cases at A-5 (ABA 1999); *All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 749 (11th Cir. 1998), *cert. denied*, 119 S. Ct. 1250 (1999); *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 420-22 (11th Cir. 1984);  Doc. # 619 (Pretrial Statement) at 23.

## INSTRUCTION NO. 9
[replace ¶ 28 of Court's 7/20/00 Draft Instructions]

### Market Power – Maris Distributing Company Has Failed to Prove

I instruct you, members of the jury, that plaintiff Maris Distributing Company has failed
to prove that Anheuser-Busch has market power in the alleged relevant product market or sub-
market such that the enforcement of the disputed provision of the contract had the potential for
genuine adverse effects on competition in that alleged market.  I therefore instruct you that in
order to find that the disputed provision of the contract had a substantial harmful effect on
competition, you must find that it had an **actual** detrimental effect upon competition in the
alleged relevant market.

*Authority:  Retina Assocs., P.A. v. Southern Baptist Hosp.*, 105 F.3d 1376, 1383-84 (11th
Cir. 1997); *U.S. Anchor Manufacturing, Inc. v. Rule Indus.*, 7 F.3d 986, 999 (11th Cir. 1993),
*cert. denied,* 114 S. Ct. 2710 (1994); *Graphic Prods. Distribs. v. Itek Corp.*, 717 F.2d 1560, 1570
(11th Cir. 1983); *L.A.P.D., Inc. v. General Elec. Corp.*, 132 F.3d 402, 405 (7th Cir. 1997);
10/19/00 Trial Tr. at 177 (Court).

IF THE COURT DOES NOT GIVE INSTRUCTION NO. 9, ANHEUSER-BUSCH REQUESTS
THAT INSTRUCTION NOS. 10 - 12 BE GIVEN.

)                                                    )

## INSTRUCTION NO. 10
**[insert between ¶¶ 28 & 29 of Court's 7/20/00 Draft Instructions]**

### <u>Market Power – Market Share – General</u>

Market share is the "*sine qua non*" of market power.  Therefore, in order to establish that

Anheuser-Busch has market power, Maris Distributing must, at a minimum, prove that

Anheuser-Busch has a **<u>substantial share</u>** of the relevant product market.  In other words, to

establish that Anheuser-Busch has market power in the claimed product market of ownership

interests in beer wholesalerships in the United States, Maris Distributing must prove that

Anheuser-Busch owns a number of these wholesalerships that, as a percentage of the total

number of beer wholesalerships in the United States, constitutes a substantial share of the market.

If you find that Maris Distributing has failed to establish that Anheuser-Busch owns a substantial

share of this product market, you must find in favor of Anheuser-Busch on the question of

market power in this product market.

Similarly, to establish that Anheuser-Busch has market power in the claimed submarket

consisting solely of ownership interests in Anheuser-Busch wholesalerships in the United States,

Maris Distributing must prove that Anheuser-Busch owns a number of these wholesalerships

that, as a percentage of the total number of Anheuser-Busch beer wholesalerships in the United

States, constitutes a substantial share of this submarket.  If you find that Maris Distributing has

failed to establish that Anheuser-Busch owns a substantial share of this submarket, you must find

in favor of Anheuser-Busch on the question of market power in this submarket.

**Authority:** Committee on Pattern Jury Instructions, Eleventh Circuit, <u>Pattern Jury</u>
<u>Instructions Civil Cases</u> 189-90 (2000); <u>Sample Jury Instructions in Civil Antitrust Cases</u> at A-6
(ABA 1999); *Retina Assocs., P.A. v. Southern Baptist Hosp.*, 105 F.3d 1376, 1383-84 (11th Cir.
1997); *U.S. Anchor Manufacturing, Inc. v. Rule Indus.*, 7 F.3d 986, 999 (11th Cir. 1993), *cert.*

10

)                    )

*denied,* 114 S. Ct. 2710 (1994); *Graphic Prods. Distribs. v. Itek Corp.*, 717 F.2d 1560, 1570 (11th Cir. 1983); *L.A.P.D., Inc. v. General Elec. Corp.*, 132 F.3d 402, 405 (7th Cir. 1997); 10/19/00 Trial Tr. at 177 (Court).

## INSTRUCTION NO. 11
**[insert between ¶¶ 28 & 29 of Court's 7/20/00 Draft Instructions]**

### Market Power – Market Share – Not In Beer Market

There is an important distinction that you must make in determining whether Anheuser-Busch has market power in the relevant product market and submarket.  When you consider Anheuser-Busch's market share, you are to look at its market share in the claimed product market of ownership interests in beer wholesalerships and submarket of ownership interests in Anheuser-Busch beer wholesalerships.  You **are not** to consider Anheuser-Busch's market share in the **beer** market.  That is because Anheuser-Busch's market share in the beer market is not relevant to your determination of whether Anheuser-Busch has market power in the alleged product market or submarket alleged in this case.

**Authority:**  10/19/00 Trial Tr. at 175-76 (Court).

12

## INSTRUCTION NO. 12
### [insert between ¶¶ 28 & 29 of Court's 7/20/00 Draft Instructions]

### <u>Market Power – As Distinguished From Contract Power</u>

In making your determination regarding market power, you also should not consider the

effect of clauses in the Equity Agreement other than paragraph 4(i), because these clauses are not

in dispute in this case.  Most importantly, you have heard testimony that Anheuser-Busch has the

right under the Equity Agreement to approve or disapprove the potential purchaser of an

Anheuser-Busch wholesalership.  That clause is not being challenged in this case, and you should

not consider Anheuser-Busch's right of approval in determining whether Anheuser-Busch has

market power.

**Authority:**  10/19/00 Trial Tr. at 169-70, 176-77 (Court); *United Farmers Agents Ass'n v. Farmers Ins. Exch.*, 89 F.3d 233, 236-37 (5th Cir. 1996), *cert. denied,* 519 U.S. 1116 (1997); *Queen City Pizza*, 124 F.3d at 438; *Mozart Co*, 833 F.2d at 1346-47; *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1272-74 (9th Cir. 1975); *Tominaga v. Shepherd*, 682 F. Supp. 1489, 1494-95 & n. 4 (C.D. Cal. 1988); Alan H. Silberman, *The Myths of Franchise "Market Power,"* 65 Antitrust L.J. 181, 205-06, 212-14 (1996); *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 696 (5th Cir. 1975); *Kestenbaum v. Falstaff Brewing Corp.*, 575 F.2d 564, 573 (5th Cir. 1978).

## INSTRUCTION NO. 13
### [insert between ¶¶ 28 & 29 of Court's 7/20/00 Draft Instructions]

### <u>Actual Anticompetitive Effects in the Relevant Market</u>

As I instructed you earlier, the second way in which plaintiff Maris Distributing can prove that Anheuser-Busch's prohibition on the public ownership of its wholesalerships had a harmful effect on competition in that market is to show that the prohibition on public ownership had "actual anticompetitive effects" in the relevant product market. "Actual effects" means just what it sounds like – that provision on public ownership **actually had** anticompetitive effects in the alleged relevant product market. In other words, it is not enough to speculate that the provision **might have** such effects. Nor is harm to Maris Distributing alone enough. "Actual anticompetitive effects" means that the prohibition on public ownership has harmed overall competition in a substantial portion of the alleged relevant product market by raising prices or restricting output, for example. If you find that the plaintiff has not proved a harmful effect on competition in the alleged relevant market, then you must find in favor of Anheuser-Busch.

**Authority:** <u>Sample Jury Instructions in Civil Antitrust Cases</u> at A-5 to A-6 (ABA 1999); Committee on Pattern Jury Instructions, Eleventh Circuit, <u>Pattern Jury Instructions Civil Cases</u> at 189-90 (2000); *Southern Card & Novelty, Inc. v. Lawson Mardon Label, Inc.*, 138 F.3d 869, 876-77 (11th Cir. 1998).

14

)                                    )

**INSTRUCTION NO. 14**
**[insert between ¶¶ 30 & 31 of Court's 7/20/00 Draft Instructions]**

**Anticompetitive Effects –Paragraph 4(i) In Place For Over 30 Years**

In deciding whether plaintiff has proven any anticompetitive effects flowing from

paragraph 4(i), you should take into consideration the fact that this provision has been in effect

for over thirty years.

**Authority:**  Sample Jury Instructions in Civil Antitrust Cases at A-5 (ABA 1999).

## INSTRUCTION NO. 15
### [insert between ¶¶ 30 & 31 of Court's 7/20/00 Draft Instructions]

### Anticompetitive Effects – Failure To Obtain Best Possible Price

In deciding whether plaintiff has proven that there were anticompetitive effects resulting from paragraph 4(i) of the Equity Agreement, you **are not** to take into consideration plaintiff's claim that if it were not for paragraph 4(i), it could have sold its business to the public for more money.  Even if that were true – and that question is solely for you, members of the jury, to decide – a low price is not something that would constitute injury to competition under the antitrust laws.  In the context of this case, low prices benefit consumers regardless of how those prices are set, and the antitrust laws were designed to protect competition and not to maximize the wealth of a particular firm or individual.

**Authority:** *Levine v. Central Fla. Med. Affil., Inc.*, 72 F.3d 1538, 1551 (11th Cir. 1996); *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 696 (5th Cir. 1975), 575 F.2d 564, 573 (5th Cir. 1978); *Wellwoods Dev. Co. v. City of Aurora*, 631 F. Supp. 221, 229 (N.D. Ill. 1986); *McDaniel v. General Motors Corp.*, 480 F. Supp. 666, 673 (E.D.N.Y. 1979), *aff'd mem.*, 628 F.2d 1345 (2d Cir. 1980); *State Oil Co. v. Kahn*, 522 U.S. 3, 15 (1997).

16

)                                          )

## INSTRUCTION NO. 16
### [insert between ¶¶ 30 & 31 of Court's 7/20/00 Draft Instructions]

### <u>Substantial Harm To Competition</u>

If you find that the restraint did harm competition in the relevant market, you must then consider the extent to which competition was harmed.  A restraint is unreasonable only if it "substantially" harms competition.  A restraint that has only a slight or insubstantial impact on competition is not unreasonable or unlawful.  Where a restraint does not affect price, output, or product quality, it is unlikely to "substantially" harm competition.  If plaintiff has not proven that the restraint substantially harmed competition in the alleged relevant market, then you must find in favor of Anheuser-Busch.

**Authority:** <u>Sample Jury Instructions in Civil Antitrust Cases</u> at A-5 to A-6 (ABA 1999); Committee on Pattern Jury Instructions, Eleventh Circuit, <u>Pattern Jury Instructions Civil Cases</u> at 189-90 (2000).

17

)                                              )

**INSTRUCTION NO. 17**
**[insert after ¶ 31 of Court's 7/20/00 Draft Instructions]**

**<u>Balancing Anticompetitive Effects Against</u>**
**<u>Pro-competitive Benefits Of The Alleged Restraint – General</u>**

In this case, defendant Anheuser-Busch alleges that there are several pro-competitive

benefits that result from paragraph 4(i).  If the beneficial effects of paragraph 4(i) outweigh the

harmful effects, or if the net effect on competition is harmful but insubstantial, the restraint

cannot be found unreasonable or unlawful, and you must find in favor of Anheuser-Busch on this

issue.  If, however, the anticompetitive effects of Anheuser-Busch's restraint are substantial and

outweigh its pro-competitive benefits, then you should find for Maris Distributing on this issue.


**Authority:** <u>Sample Jury Instructions in Civil Antitrust Cases</u> at A-6 to A-7 (ABA 1999);
Committee on Pattern Jury Instructions, Eleventh Circuit, <u>Pattern Jury Instructions Civil Cases</u>
189-90 (2000).

)                                                    )

## INSTRUCTION NO. 18
### [insert between ¶¶ 33 & 34 of Court's 7/20/00 Draft Instructions]

### <u>Antitrust Injury – General</u>

In determining whether Maris Distributing has satisfied its burden of proving antitrust injury, you must affirmatively answer two questions: **First**, did Anheuser-Busch's conduct cause or threaten harm to consumers?  And **second**, did Maris Distributing Company's injury, if any, flow from an aspect or effect of Anheuser-Busch's conduct that was harmful or threatened harm to consumers?

**Authority:** *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 334-35 (1990); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Isaksen v. Vermont Castings, Inc.,* 825 F.2d 1158, 1165 (7th Cir. 1987), *cert. denied,* 486 U.S. 1005 (1988); *Matsushita Elecs. Indus., Co. v. Zenith Radio Corp.,* 475 U.S. 574, 584-88 (1986); *Midwestern Waffles, Inc. v. Waffle House, Inc.,* 734 F.2d 705, 722-23 (11th Cir. 1984).

)                                              )

**INSTRUCTION NO. 19**
**[insert between ¶¶ 33 & 34 of Court's 7/20/00 Draft Instructions]**


**<u>Antitrust Injury – Causation – General</u>**

In order to establish the second part – whether the injury (if any) flowed from an aspect or

effect of Anheuser-Busch's conduct that was harmful or threatened harm to consumers – plaintiff

must prove that paragraph 4(i) was a "material cause" of injury to its business or property.


**Authority:** *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9
(1969).

## INSTRUCTION NO. 20
### [insert between ¶¶ 33 & 34 of Court's 7/20/00 Draft Instructions]

### Antitrust Injury – Causation –
### Public Sale of Maris Distributing

In determining whether plaintiff has proved that paragraph 4(i) was a material cause of any injury to Maris Distributing, you should take into consideration whether Maris Distributing Company took steps toward selling its company to the public and whether it would have been viable for Maris Distributing Company to sell to the public. If Maris Distributing Company failed to establish either of these points, then you must find for Anheuser-Busch on the question of antitrust injury and render a verdict for Anheuser-Busch.

**Authority:** *Murray v. National Football League*, 1998-1 Trade Cas. (CCH) ¶ 72,147 at 81,945 (E.D. Pa. 1998).

## INSTRUCTION NO. 21
**[insert between ¶¶ 33 & 34 of Court's 7/20/00 Draft Instructions]**

### Antitrust Injury – Causation – Other Causes

If Maris Distributing's injuries (if any) flowed from aspects of Anheuser-Busch's conduct

that are simply legitimate competition, or from Maris Distributing's own actions or inactions, or

for other reasons that are unrelated to the prohibition on public ownership, then Maris

Distributing has suffered no antitrust injury, and you must find in favor of Anheuser-Busch.


**Authority:**  Committee on Pattern Jury Instructions, Eleventh Circuit, <u>Pattern Jury</u>
<u>Instructions Civil Cases</u> 191-192 (2000); <u>Sample Jury Instructions in Civil Antitrust Cases</u> at F-8
(ABA 1999).

)                                    )

**INSTRUCTION NO. 22**
**[insert between ¶¶ 34 & 35 of Court's 7/20/00 Draft Instructions]**

**<u>Damages – Only For Antitrust Injury</u>**

Under the antitrust laws, a plaintiff may recover monetary damages only for "antitrust

injury," which is a phrase I just explained to you.  This means that plaintiff is entitled to damages

only for injuries caused by a violation of the antitrust laws, and you may not award damages for

injuries or losses caused by other factors.

**Authority:** Committee on Pattern Jury Instructions, Eleventh Circuit, <u>Pattern Jury</u>
<u>Instructions Civil Cases</u> 191-192 (2000); <u>Sample Jury Instructions in Civil Antitrust Cases</u> at F-8
(ABA 1999).

)                              )

## INSTRUCTION NO. 23
### [insert between ¶¶ 34 & 35 of Court's 7/20/00 Draft Instructions]

### <u>Damages – Not For Termination</u>

In particular, you are instructed that you are not permitted to award any monetary damages based upon the termination of Maris Distributing Company.  That is because, as I have already instructed you, that termination is not an issue that is relevant in this case here in this court.


**Authority**:  9/26/00 Trial Tr. at 173-74 (Court); 7/20/00 Order (Doc. # 627).

24

)                                    )

## INSTRUCTION NO. 24
**[insert between ¶¶ 36 & 37 of Court's 7/20/00 Draft Instructions]**

### <u>Damages – Amount – No Speculation or Guesswork</u>

In order to obtain damages, Maris Distributing must establish to a reasonable degree of certainty that its alleged loss was caused by Anheuser-Busch's unlawful acts, and it must further demonstrate that its estimate of such losses is both just and reasonable. In considering Maris Distributing's claim for damages you should bear in mind that you may not award any damages based on speculation or guesswork.

**Authority:** Committee on Pattern Jury Instructions, Eleventh Circuit, <u>Pattern Jury Instructions Civil Cases</u> at 191-192 (2000); <u>Sample Jury Instructions in Civil Antitrust Cases</u> at F-8; F-13 to F-14 (ABA 1999).

)                                          )

## INSTRUCTION NO. 25
### [insert between ¶¶ 36 & 37 of Court's 7/20/00 Draft Instructions]

### <u>Damages – Amount – "Unconstrained" Value Greater Than $73 Million</u>

In particular, in order to recover any damages at all, Maris Distributing must establish to a reasonable degree of certainty that what it calls the "unconstrained" value of its business was greater than $73 million.


**Authority:**  Joint Pretrial Stipulation (Doc. # 619) at 20.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant Anheuser-Busch,

Inc.'s Proposed Supplemental Jury Instructions, with Attachments A, B and C, was served by

hand delivery, this 3rd day of November, 2000, upon each of the parties listed below:

>Bernard H. Dempsey, Jr.
>DEMPSEY & SASSO
>Barnett Bank Center
>Suite 2700
>390 N. Orange Avenue
>Orlando, Florida  32801
>
>Manuel Socias
>111 N. Orange Avenue
>Suite 700
>Orlando, Florida  32801
>
>**Attorneys for Plaintiff**
>**Maris Distributing Company**
>
>Dianne S. Pickersgill

27



**7/27/99 FTM**

# ADDITIONAL

# ATTACHMENTS

# <u>NOT</u>

# SCANNED

___ Exceeds scanner's page limit
_X_ Physical exhibit prevents scanning
___ Other:_____

# **PLEASE REFER TO COURT FILE**



)                            )

**DRAFT**
**OF**
**7-20-00**

*w/ numbered paragraphs), revisions; and notations as to location of proposed supplemental instructions*

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

MARIS DISTRIBUTING COMPANY,

Plaintiff,

-vs-                                    CASE NO.  5:97-cv-15-OC-10

ANHEUSER-BUSCH, INC.,

Defendant.

_____/

## COURT'S INSTRUCTIONS
## TO THE JURY

Members of the Jury:

*1.*     I will now explain to you the rules of law that you must follow and apply

in deciding this case.

*2.*     When I have finished you will go to the jury room and begin your

discussions - - what we call your deliberations.

3.      In deciding the case you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

4.      The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company.

5.      In your deliberations you should consider only the evidence - - that is, the testimony of the witnesses and the exhibits I have admitted in the record - - but as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

INSERT INSTR. NOS. 1, 2

6.      Remember that anything the lawyers say is not evidence in the case.

INSERT INSTR. NO. 3

And, except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your decision concerning the facts.  It is your own recollection and interpretation of the evidence that controls.

7.      Now, in saying that you must consider all of the evidence, I do not mean that you must accept all of the evidence as true or accurate.  You should decide whether you believe what each witness had to say, and how important that testimony was.  In making that decision you may believe or disbelieve any witness, in whole or in part.   Also, the number of witnesses testifying concerning any particular dispute is not controlling.

8.      In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions:  Did the witness impress you as one who was telling the truth?  Did the witness have any particular reason not to tell the truth?  Did the witness have a personal interest in the outcome of the case?  Did the witness seem to have a good memory?  Did the witness have the opportunity and ability to observe accurately the things he or she testified about?  Did the witness appear to understand the questions clearly and answer them directly?  Did the witness' testimony differ from other testimony or other evidence?

9.   You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

10.   You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately.   So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

11.   When knowledge of a technical subject matter might be helpful to the jury, a person having special training or experience in that technical field is permitted to state an opinion concerning those technical matters.

12.     Merely because such a witness has expressed an opinion, however, does not mean that you must accept that opinion.  The same as with any other witness, it is up to you to decide whether to rely upon it.

*INSERT INSTR. NO. 4*

13.     In this case it is the responsibility of the Plaintiff to prove every essential part of the Plaintiff's claim by a "preponderance of the evidence."  This is sometimes called the "burden of proof" or the "burden of persuasion."

14.     A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiff's claim is more likely true than not true.

15.     In deciding whether any fact has been proved by a preponderance of the evidence you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

16.     If the proof fails to establish any essential part of the Plaintiff's claim by a preponderance of the evidence, you should find for the Defendant as to that claim.

17.   In this case the Plaintiff, Maris Distributing Company, a Florida corporation, claims that the Defendant, Anheuser-Busch, Inc., a Missouri corporation, violated Title 15, United States Code, Section 1, commonly known as Section 1 of the Sherman Act, which is a part of the antitrust laws of the United States.

18.   Section 1 of the Sherman Act provides that any contract which unreasonably restrains interstate trade or commerce is illegal; and any person or corporation who is injured in his or its trade or business as a legal result of the enforcement of such a contract may sue and recover damages for that injury.

19.   The purpose of the antitrust laws is to preserve our system of free and open competition, the most important part of our private enterprise system. The law promotes the concept that free competition results in the best allocation of economic resources; but the law does not guarantee success to all of those who enter into business because it also recognizes that in the natural operation of our economic system, some competitors are going to lose business, or even go out of business, while others gain and prosper.

20.   Acts become unlawful, therefore, only when they constitute an unreasonable restraint on interstate commerce.

21. The Plaintiff's specific claim is that it was a distributor of Anheuser-Busch beer products pursuant to a distributorship agreement between the parties, and that a provision ~~inserted into~~ *contained in* that agreement ~~by Anheuser-Busch~~ constituted an unreasonable restraint on commerce in violation of Section 1 of the Sherman Act for which the Plaintiff is entitled to recover damages in this suit. The particular provision of the contract that the Plaintiff claims to have been unlawful is a provision that prohibited the Plaintiff, Maris Distributing Company, from selling the distributorship, or any interest in it, to any other company whose stock was publicly held, that is, a company whose stock is bought and sold in a public market.

22. In order to prove that this contractual restraint was unreasonable and therefore unlawful, the Plaintiff must prove that the provision of the contract in dispute substantially harmed competition in a relevant market. To show this, the Plaintiff must prove each of the following things by a preponderance of the evidence:

<dl>
<dt>First:</dt>
<dd>What the relevant geographic and product market is;</dd>
</dl>

First: What the relevant geographic and product market is;

Second: That the provision of the contract in dispute had a substantial harmful effect on competition in that market;

Third: That the harmful effect on competition outweighed any beneficial effect on competition; and

Fourth: ) ⌐antitrust⌐ That the Plaintiff suffered injury in its business or property as a legal result of the contractual provision in dispute.

23. In the verdict form that I will explain in a moment, you will be asked a series of questions concerning each of these factual issues.

24. With regard to the first of these things, the Plaintiff claims that the relevant product market consists of the buying and selling of wholesale beer distributorships, and that the geographic area of such market is the entire United States.

25. The Defendant agrees that if such a market existed, its geographic territory would be the entire United States thereby affecting interstate commerce; but the Defendant claims that the Plaintiff has failed to establish the existence of any recognizable product market limited to the buying and selling of beer distributorships, much less a sub-market consisting of the buying and selling of Anheuser-Busch distributorships.

26. The basic idea of a relevant product market is that the products bought and sold within it are substantially similar to each other or constitute reasonable substitutes for each other from a buyer's point of view; that is, the products compete with each other. This does not mean that the products must be identical to be in the same relevant product market. It means, as a matter of practical fact based on the actual behavior of buyers, that the products are

reasonable substitutes for each other. The basic test is whether changes in the price of one product cause a considerable number of customers to switch from one product to another similar product. If so, the products are in the same market. You may also consider how people in the industry and the public at large view the products; whether the products have the same of similar characteristics or uses; whether the products have similar prices; whether the changes in the price of one product are followed by changes in the price of the other product; and, whether the products are sold to similar customers.

INSERT INSTR. NOS. 5-8

27.    With regard to the second thing the Plaintiff must prove - - that the provision of the contract in dispute had a substantial harmful effect on competition in the relevant market -- the Plaintiff must prove the requisite anti-competitive effect in either of two ways: (1) by proving actual detrimental effect upon competition in the properly defined market; or (2) by proving that the Defendant possessed "market power" in the relevant market such that the Defendant's enforcement of the disputed provision of the contract had the potential for genuine adverse effects on competition in that market.

28.    "Market power" includes the ability to control price, exclude competition or restrict output. You may consider the Defendant's share or portion of the overall market; whether there are any barriers to entry by new firms in the

REPLACE WITH INSTR. NO. 9

market; and evidence concerning the intensity of competition within the market when determining if a company possesses sufficient market power to affect competition adversely.

*OR: INSERT INSTR. NOS. 10-12*    *INSERT INSTR. NO. 13*

29. Your analysis should concern the actual or likely effects of the Defendant's behavior to determine if the conduct is unreasonable, whether that was the intended result or not. However, when considering the effect of the alleged restraint on competition, you may consider whether its purpose was legitimate or proper. Remember that good intentions do not make a restraint with unreasonable anticompetitive effects lawful, and proof of an improper purpose is simply one factor that may help support, but does not by itself support, a finding of unreasonable restraint.

30. When deciding if the Plaintiff has met its burden, you may consider the facts relating to the nature of the particular industry or the product or service involved; any facts that you find to be peculiar to that industry, product, service, or market area; the nature of the alleged restraint; the history of the circumstances surrounding the alleged restraint, and the reasons for adopting the particular practice that is alleged to constitute the restraint.

*INSERT INSTR. NOS. 14-16*

31. The Defendant claims that the Plaintiff has failed to establish the requisite anti-competitive effect in either of the ways previously mentioned; and, indeed, that the contractual provision in dispute was pro-competitive in

its purpose and effect.  And, in that regard, the third thing the Plaintiff must

prove is that the harmful effect on competition caused by the contractual

provision in dispute outweighed any beneficial effect on competition.

INSERT INSTR. NOS 17

32.    The fourth fact the Plaintiff must prove is that the Plaintiff suffered injury

in its business or property as a "legal result" of the alleged unreasonable

restraint.  It frequently occurs in the course of normal, lawful competition that

some businesses suffer economic losses, or even go out of business, and it

is only when losses are caused by unlawful restraints that the antitrust laws

are violated.

33.    An injury to a business is the "legal result" of an antitrust violation only

when the violation directly and in natural and continuous sequence produces,

or contributes substantially to producing, such injury.  In other words, the

alleged violation must be a direct, substantial, and identifiable cause of the

injury that the Plaintiff claims so that, but for the antitrust violation, the injury

would not have occurred.

INSERT INSTR. NOS. 18-21

34.    If you should find for the Plaintiff, the law provides that the Plaintiff

should be fairly compensated for all damage, if any, to its business and

property that was legally caused by the Defendant's violation of the antitrust

laws.

INSERT INSTR. NOS. 22,23

35.   In this instance the Plaintiff's claim of damages is the difference between

the fair market value of the distributorship, with the alleged unlawful restraint

~~imposed~~, *included in the contract* and the fair market value the distributorship would have had if the

alleged unlawful restraint had not been ~~imposed~~ *included in the contract*. If you find for the Plaintiff

you should consider that measure of damages, based upon a preponderance

of the evidence, and that measure alone.

36.   "Fair market value" means the amount a willing buyer would have paid

a willing seller in an arms-length transaction with both parties being fully

informed concerning all of the advantages and disadvantages of the property,

and with neither acting under any compulsion to buy or sell.  In arriving at your

decision concerning fair market value, you should take into account all factors

that could fairly be suggested by the seller to increase the price, and all

counter-arguments that the buyer could fairly make to reduce the price.

INSERT INSTR. NOS. 24, 25

37.     Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

38.     Any verdict you reach in the jury room must be unanimous.  In other words, to return a verdict you must all agree.  Your deliberations will be secret; you will never have to explain your verdict to anyone.

39.     It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong.  But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

40.     Remember, that in a very real way you are judges - - judges of the facts. Your only interest is to seek the truth from the evidence in the case.

41.     When you go to the jury room you should first select one of your members to act as your foreperson.  The foreperson will preside over your deliberations and will speak for you here in court.

42.     A form of verdict has been prepared for your convenience.


[Explain verdict]


43.     You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.


44.     If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention.  I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally.  I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.



1          UNITED STATES DISTRICT COURT
           MIDDLE DISTRICT OF FLORIDA
2               OCALA DIVISION

3    MARIS DISTRIBUTING COMPANY,      Case No. 5:97-cv-15-Oc-10

4                   Plaintiff,

5    vs

6

7    ANHEUSER-BUSCH, INC.,

8                   Defendant.

9    _____\

10

11              TRANSCRIPT OF PROCEEDINGS

12

13       BEFORE THE HONORABLE WM. TERRELL HODGES

14                September 26, 2000

15

16                   JURY TRIAL

17

18

19

20

21

22

23

24

25

1    A.    Yes, he told us that it was time for us to --

2          MR. MOLL:  Objection Your Honor.  Can we have an

3    answer to that question?

4          THE COURT:  I think it is not responsive.  In order

5    that the jury can understand this, I may repeat these comments

6    several times during the course of this trial ladies and

7    gentlemen.  As I said to you, as a part of my preliminary

8    instructions when we began this morning or this afternoon

9    there are two separate lawsuits that are pending between these

10   parties.  There is this case, which I will come to in a moment

11   and there is a lawsuit pending in state court which as I

12   understand it, raises issues of breach of contract.  The

13   rightfulness or wrongfulness therefore of the termination of

14   this agreement by Anheuser-Busch is not at issue in this case.

15   That's going to be resolved in the state court litigation and

16   should be completely disregarded by you as to whether that was

17   justified or unjustified, right, wrong or indifferent.  It's

18   only relevance in this lawsuit is that this disagreement is

19   what prompted the effort by Mr. Maris and Maris Distributing

20   Company to undertake a sale of the distributorship which did

21   not come about because, as I understand it, he was unable to

22   obtain the price that he thought was appropriate for the sale

23   of the distributorship.  The termination then occurred and

24   these lawsuits resulted.

25          In this case the only issue that you are going to be

1   called upon to decide is whether or not the prohibition

2   against the sale of the distributorship to a publicly owned

3   entity was or was not a violation of the antitrust laws of the

4   United States and if it was what the damages were that were

5   caused by that violation to Maris Distributing Company.  But

6   those damages, if they exist, have nothing whatever to do with

7   the termination of the contract itself and any contract

8   damages that might be stalled in the state court action.

9        So any questions in this case or any exhibits that

10  might be offered which might have to do with the reasons for

11  the termination, whether it was justified or unjustified,

12  whether Maris Distributing Company was complying or not

13  complying with the contract are totally irrelevant here.  The

14  only issue here is whether or not paragraph 4(i) of the

15  contract which has to do with the prohibition against sale to

16  a publicly held entity which had nothing in itself to do with

17  the termination, was or was not a violation of the antitrust

18  laws.

19       And given this interruption we are coming up on 5:00.

20  This may be a good point for us to recess for the day.  You

21  may step down Mr. Maris.  We'll recess in a moment.   Let me

22  see counsel at side-bar a moment before I excuse the jury,

23  please.

24                      (At side bar.)

25       THE COURT:  I was told by the clerk Mr. Moll you

1                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
2                         OCALA DIVISION

3      MARIS DISTRIBUTING COMPANY,      Case No. 5:97-cv-15-Oc-10

4                      Plaintiff,

5      vs

6

7      ANHEUSER-BUSCH, INC.,

8                      Defendant.

9      _____\

10

11

12                    TRANSCRIPT OF PROCEEDINGS

13          BEFORE THE HONORABLE WM. TERRELL HODGES

14                       October 19, 2000

15

16                         JURY TRIAL

17

18

19

20

21

22

23

24

25

1        A.    Yes, the number of distributorships available.

2        Q.    Now does the public ownership prohibition control

3   output?

4        A.    Sure it does because as we discussed earlier, by

5   keeping prices down there is less of an incentive to sell

6   and we have seen in the Clean Sheet Study from Mr. Adkins

7   that if it were lifted there would be financial incentives

8   for consolidation to occur more quickly.

9        Q.    Even apart from the public ownership prohibition

10  but focusing on your market power analysis, based on the

11  investigation that you performed, are you aware, did you

12  learn of any specific instances where Anheuser-Busch made

13  decisions, exercised power over who would enter and who

14  would exit beer distribution?

15       A.    Yes.

16       Q.    And would you describe those instances for us,

17  would you describe the instances?

18       A.    Well they have to do, many of them have to do with

19  Mr. Maris' attempts to sell his distributorship.

20            MR. ZARLENGA:   I am going to object to this Your

21  Honor.   I think this has been ruled on.

22       Q.    In keeping --

23            THE COURT:   I will sustain that objection Mr.

24  Socias.   I think we have been through this in terms of

25  distinguishing between market power and/or the effect of the

1    contract clause in dispute as distinguished from other

2    clauses of the contract that are not in dispute.  That is to

3    say the difference between market power and contract power.

4    So I adopt the ruling I made before on that point.

5              MR. SOCIAS:  Yes, Your Honor.

6    BY MR. SOCIAS:

7        Q.    Now as Your Honor just said you are aware, are you

8    not Dr. Pisarkiewicz, that Anheuser-Busch has the right

9    under its Equity Agreement to approve buyers, are you not?

10       A.    Yes, I am.

11       Q.    And it has the right to reject buyers on

12   reasonable grounds, is it not?

13       A.    It does.

14       Q.    Based on your investigation, have you uncovered

15   any instances where Anheuser-Busch, apart from that contract

16   right to approve or reject buyers, has made decisions and

17   implemented them as to who would exit and who would enter

18   into beer distribution?

19             MR. ZARLENGA:  I object to that question as

20   argumentative and also I think it's a way to try to

21   circumvent the ruling, Your Honor.

22             THE COURT:  Well, I'll reserve ruling on that for

23   the moment.  Can you answer that yes or no Dr. Pisarkiewicz?

24             THE WITNESS: Yes, I am aware of instances, Your

25   Honor where potential buyers have been discouraged from who

1     power in the market for the buying and selling of beer to

2     the separate market for the buying and selling of beer

3     distributorships?

4            THE WITNESS:  Well in tying cases Your Honor that

5     would be exactly the way it would be done.

6            THE COURT:  But this is not a tying case.

7            THE WITNESS:  It is a vertical restraint case.

8            THE COURT:  Do you know of any case in which that

9     imputation has been made in a non priced vertical restraint

10    case?

11           THE WITNESS:  I would have to look at some of the

12    franchise cases Your Honor where certain lines of

13    franchisees, for example soft ice creams have been named

14    relevant product markets and then look at what Dairy Queen's

15    share is of that.  That would be a way to go.

16           Here in this case you have got the combination, it

17    seems to me of Anheuser-Busch's share in beer coupled with

18    the power it gets through the contract.  Contracts of course

19    can be illegal.  They certainly can be in the franchise area

20    where the Federal Trade Commission for example enacted a lot

21    of trade regulations and rules with respect to disclosure of

22    franchise sources have to make to prospective franchisees.

23    Here you have got a situation --

24           THE COURT:  I think we have discussed it far

25    enough.  I'm inclined to rule as a matter of law this is

1    irrelevant.   I think what is being done is imputation of

2    market power in the beer market.   Two, market power for the

3    market distribution of beer products which is a separate

4    market and I don't think that is appropriate as I understand

5    the law with respect to non priced vertical restraints.   So

6    we can move on to something else.

7           MR. SOCIAS:   Your Honor, if I could I would like

8    to try to approach this area from a different angle hoping

9    that I don't run afoul of your order.

10          THE COURT:   Well let me, may I suggest that you

11   can make an oral proffer at the appropriate time in that

12   respect and I can perhaps pass on it, but for the time being

13   I suggest you complete your examination of Dr. Pisarkiewicz.

14   If you have any other line of examination then pursue them.

15   BY MR. SOCIAS:

16          Q.   I believe I previously handed you Plaintiff's

17   Exhibit Number 83 Dr. Pisarkiewicz.   Do you still have that?

18          A.   I'm not sure.

19          Q.   Let me show you Plaintiff's Exhibit 83 which is in

20   evidence.   And we have looked at this before but only in

21   relation to a pie chart that appears here and I want to

22   direct your attention to some other parts of this document.

23   Specifically page 5 where it refers to the application of

24   Anheuser-Busch wholesaler system development being to manage

25   the acquisition and divesture transactions through closings

1     for WODs, ABICCs or sales to independents.  Do you see that?

2          A.   Yes, I do.

3          Q.   Does that relate in any way to your opinions

4     regarding market power?

5          A.   I believe it does, yes.

6          Q.   And in what way?

7          A.   It indicates, this is a mission of the

8     wholesaler --

9               MR. ZARLENGA:  Your Honor, I object to this.  I

10    really think this is another way of getting at the contract

11    issue of changes in ownership of distributors.  That is

12    really what we are talking about here.

13              MR. SOCIAS:  Your Honor there is nothing in the

14    contract that allows Anheuser-Busch to manage transactions.

15    Their only contract right is to approve or reject buyers

16    when exhibit 7 is submitted.

17              THE COURT:  By the same token I don't see that

18    that is related or keyed directly to the prohibition against

19    public ownership standing alone Mr. Socias and based on my

20    ruling of a moment ago with respect to market share as being

21    the sine qua non of market power in a vertical non priced

22    restraint case I think it renders this irrelevant.  And that

23    will be my ruling.

24    BY MR. SOCIAS:

25         Q.   Have you performed an analysis in connection with